Filed 12/26/14  In re S.K. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re S.K., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>P.K.,<br><br>        Defendant and Appellant. | A142149<br><br>(Alameda County Super. Ct. No. OJ14022590) |

P.K. (Father), father of 17-year-old S.K., appeals from the juvenile court's order removing S.K. from his custody and placing her in the home of a relative.  He contends: (1) there was no substantial evidence to support the findings that there was a substantial risk of serious harm to S.K. due to her parents' failure to protect her, or that she was left without provision for support; and (2) the juvenile court abused its discretion in ordering him to participate in reunification services.  We reject the contentions and affirm the order.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 19, 2014, the Alameda County Social Services Agency ("Agency") filed a petition alleging there was a substantial risk of serious harm to S.K. due to her

parents' failure to protect her (Welf. & Inst. Code, § 300, subd. (b)[1]), and that she had been left without any provision for support (§ 300, subd. (g)). According to the petition, S.K.'s paternal grandmother (Paternal Grandmother), who had cared for S.K. since she was five years old, was no longer willing to provide care for her. At the time of the petition, S.K. was in her maternal grandmother's (Maternal Grandmother) care without provision for financial support by her parents. Her mother (Mother) had a history of substance abuse that interfered with her ability to care for S.K., and Mother's other two minor children[2] were under the legal guardianship of Maternal Grandmother due to neglect issues. Neither Mother nor Father had a stable or adequate place for S.K. to live. S.K. refused to return to the home of Paternal Grandmother, Mother, or Father, stating each of them had a substance abuse problem. The petition further alleged that Mother and Father had not provided care or financial support for S.K. since she was five years old.

According to the detention report, Mother and Father were "reported to abuse illegal drugs" and were homeless. Mother acknowledged she struggled with substance abuse and said Father was also "in and out" of his addiction. She reported that when Father receives his disability check, he and Mother "smoke crack together." She did not have a home and said she would not be able to care for S.K. Father reported that he was awarded legal and physical custody of S.K. when she was very young because she was born with drugs in her system and Mother was homeless.[3] He had not appeared to have been actively involved in his daughter's care. He said he was "not totally in agreement with [S.K.'s] placement with [Maternal Grandmother], but he did not wish her to be placed in foster care." He said he was living with his friends at the time of the report but

---

[1]All further statutory references are to the Welfare and Institutions Code.

[2]Mother had a total of eight children—five adult children and three minor children including S.K.

[3]At the jurisdictional/dispositional hearing, Father denied making this statement. He testified, "She only had yellow jaundice. She wasn't drug-exposed."

refused to disclose his address. He said he would be able to obtain a place for S.K. to live once he received a settlement check for a work related injury.

S.K. reported she was happy living with Maternal Grandmother. She had lived with Paternal Grandmother since she was a toddler. On January 9, 2014, Paternal Grandmother, who was "really drunk," hit S.K. on the head with a shoe when S.K. said she wanted to go to her homecoming dance. When S.K. went to school the next day, she told school staff that she was scared to go home because Paternal Grandmother was "always hitting" her and she did not feel safe. Paternal Grandmother told school staff that she did not want anything to do with S.K., and then wrote a letter to a maternal aunt, asking her to take care of S.K. The maternal aunt said she could not care for S.K. S.K. said she had a bump on her head from being hit. When the social worker examined S.K.'s head on January 27, 2014, she was unable to detect a bump. S.K. said that Paternal Grandmother drank everyday.

Paternal Grandmother denied she was an alcoholic and denied hitting S.K. She said that S.K. lies when she does not get her way, and that S.K. had recently met some older men who "were the kind that would put her out on the street." S.K. began dressing differently and "sneak[ing] away," became disrespectful, and began to curse and tell lies. The social worker concluded that S.K.'s allegation of physical abuse was unfounded. The juvenile court detained S.K.

In a jurisdiction/disposition report, the Agency recommended that S.K. be declared a dependent and that services be provided to Mother. The Agency recommended that services not be offered to Father because he was an alleged father. Mother was in agreement with the recommendations; Father's position regarding the proposed recommendations was unknown. At the time of the report, there was no parent or guardian willing or able to care for S.K. Paternal Grandmother was no longer willing to provide care for S.K., and S.K. did not wish to live there, stating Paternal Grandmother was physically and verbally abusive towards her. Maternal Grandmother was willing to care for S.K., but only with court intervention. At an April 8, 2014 hearing, the juvenile court found Father was the presumed father.

In an April 14, 2014 addendum report, the Agency recommended that reunification services be provided to Father. S.K. was enjoying living with her two siblings and Maternal Grandmother. She had maintained telephone contact with Mother and Father and visited Paternal Grandmother once. She did not wish to have visits with Father or Paternal Grandmother. Father had maintained minimal telephone contact with the Agency. Father and Mother both stated they were not able to care for S.K. Mother approved of S.K. living in Maternal Grandmother's home; Father did not. In another addendum report filed May 5, 2014, the Agency reported that neither Father nor Mother had been in touch with the social worker for several weeks since the last hearing. The social worker had left voicemail messages for both of them but had not received a return phone call.

At a May 5, 2014 jurisdictional/dispositional hearing, Paternal Grandmother testified she had cared for S.K. for most of her life. She was strict but "never hit [S.K.] not even when she was small. She only got rebellious as a teenager and you don't whip teenagers." She testified that S.K. "came under the influence of some older guys" who were "in and out of Santa Rita [jail]" and that S.K. left Paternal Grandmother's home on January 10, 2014 after they had an argument. Paternal Grandmother said she was not asking for S.K. to come back to live with her. She testified that Father had a drinking problem in his 20s and went through rehabilitation treatment at the age of 29, but had not had a problem since then.

Father testified he was awarded custody of S.K. in 2000 and cared for her for "just a year or so" before his live-in girlfriend passed away and he and S.K. moved in with Paternal Grandmother. About a year and a half later, he left the home because he "was grown and . . . had to find a place to stay." Paternal Grandmother "decided to take over" at that point, and Father tried to help financially by giving Paternal Grandmother "$20 there, $40 here." He felt Paternal Grandmother had done an "excellent" job of raising S.K. He denied ever having a problem with illegal drugs and said he had not seen Mother in over ten years. He testified he was receiving social security disability benefits. He testified that for the last two years, he had been living in a room that had two beds and

4

could accommodate two people. He was willing to have S.K. come live with him and said he would "go and get a partition" so that S.K. could have privacy in the room. When asked, "Are you asking that [S.K.] come and live with you today?" he responded, "No, that's not what we're here for." S.K. had never been to his place because "she's been busy" and "she's a young person and she's trying to adjust and have fun." He had not provided food or clothing for S.K. since January 10, 2014, but testified he gave Maternal Grandmother $100 when she called to ask for money,[4] and also gave S.K. $80 for her birthday. The last time he lived with S.K. was when she was five or six years old. He had not tried to visit S.K. while she was in Maternal Grandmother's home because he was being "very careful" "[b]ecause of the petition" and did not think he was allowed to visit her. He did not ask a social worker if he could visit S.K. When asked why he refused to allow S.K. to move from Paternal Grandmother's home to the home of a maternal relative, Father responded, "Because I wasn't giving over care of my daughter. My mother was in full control."

The juvenile court sustained the petition. The court found that all of the allegations as to Mother were true. The court found not true the allegation as to Father that he was using illegal drugs and ordered that the requirement for him to undergo drug treatment and testing be removed from his case plan. The court found there was a substantial risk that S.K. would suffer serious harm by "the willful or negligent failure of [Father] to provide the child with food, clothing, shelter or medical treatment." The court noted that Father had not provided care or support for S.K. for over a decade and had not taken steps to appropriately transfer authoritative care of her to the grandmothers. The court further found there were "credibility issues" relating to Father concerning his failure to visit S.K. and his representation that he had a stable home.

---

[4]He denied he sent the $100 for another child (not S.K.) who lived with Maternal Grandmother. When asked what Maternal Grandmother said she needed the $100 for, Father responded, "Something about the phone."

DISCUSSION

*Substantial Evidence*

Father contends there was no substantial evidence to support the findings that there was a substantial risk of serious harm to S.K. due to her parents' failure to protect her, or that she was left without provision for support. We reject the contention.

" 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]." ' [Citations.]" ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Section 300, subdivision (b) authorizes dependency jurisdiction where there is a "substantial risk that the child will suffer serious physical harm or illness, as a result of the . . . 'willful or negligent failure of the [] parent . . . to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's . . . substance abuse.' " Subdivision (g) authorizes dependency jurisdiction where the child "has been left without any provision for support."

Here, the parents did not have stable homes and it was undisputed that Mother was incapable of providing for S.K. Father left S.K. in Paternal Grandmother's care when S.K. was a young child and had not lived with her nor provided her with food, clothing, shelter, or other financial assistance for approximately ten years, other than sending "$20 there, $40 here." He made no attempt to see S.K. after she moved in with Maternal

6

Grandmother, and the only financial assistance he provided during the dependency proceedings was to send $100 for Maternal Grandmother to take care of "[s]omething about the phone," and an additional $80 for S.K.'s birthday. Father asserts that jurisdiction was not necessary in this case because he left S.K. in an appropriate home, i.e., Paternal Grandmother's home. However, Paternal Grandmother was no longer willing or able to care for S.K., and Father objected to placing S.K. with Maternal Grandmother who, in any event, was not willing to care for S.K. without court intervention. In light of the ample evidence of the parents' inability to provide care or financial support for S.K., Father's objection to S.K. living with Maternal Grandmother, and Maternal Grandmother's unwillingness to provide care for S.K. without court intervention, there was a substantial risk of harm to S.K., and the juvenile court did not err in sustaining the petition under section 300, subdivisions (b) and (g).

### Reunification Services

Father contends the juvenile court abused its discretion in ordering him to participate in reunification services. He forfeited this claim by failing to object below.[5] (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501 [an appellant waives his right to attack error by acquiescing at trial to the ruling objected to on appeal].) The claim also fails on the merits because Father has failed to show that a statutory exception to reunification services applies. Generally, in dependency cases in which a child is removed from parental custody, the court is *required* to provide reasonable reunification services unless a statutory exception applies. (§ 361.5, subd. (a).) Subdivision (b)(14), which provides one such exception, states that the court is not required to order services where the parent "has advised the court that he . . . is not interested in receiving . . . services or having the child returned to or placed in his . . . custody and does not wish to receive . . . services." In such a case, the parent "shall execute a waiver of services [Judicial Council] form . . . . The court shall advise the parent . . . of any right to services

---

[5]Father argued below that "the requirement that he drug test and participate in an outpatient drug treatment program should be stricken from his case plan . . . ." He did not assert the court should not award him *any* reunification services.

7

and of the possible consequences of a waiver of services, including the termination of parental rights and placement of the child for adoption.  The court shall not accept the waiver of services unless it states on the record its finding that the parent . . . has knowingly and intelligently waived the right to services."  Here, Father did not inform the court that he did not wish to receive services, and did not provide the court with a waiver of services form.

In any event, Father has failed to show prejudice.  He simply asserts, without citation to any legal authority or argument, that the court abused its discretion in ordering services because the counseling, parenting classes, and supervised visits that were offered to him "impose[] unreasonable burdens on [him] and has the potential for significant negative ramifications if he fails to comply."  He fails to explain what the negative ramifications are, and how he is prejudiced by the opportunity to participate in services.  A juvenile court's dispositional orders, including those respecting reunification services, are subject to that court's broad discretion.  To reverse such an order, a reviewing court must find a clear abuse of discretion.  (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.)  We find no such clear abuse of discretion.

## DISPOSITION

The order is affirmed.

8

_____
McGuiness, P.J.

We concur:


_____
Pollak, J.


_____
Siggins, J.